UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RALPH ROE                                                                CIVIL ACTION

VERSUS                                                                   NO. 20-1829

CATHOLIC CHARITIES                                                       SECTION M (5)
ARCHDIOCESE OF NEW ORLEANS,
*et al.*

### ORDER & REASONS

Before the Court is the motion of plaintiff Ralph Roe to remand this case to state court.[1] Defendant Catholic Charities Archdiocese of New Orleans ("Catholic Charities") opposes the motion,[2] which opposition defendant Harold Thomas Ehlinger adopts.[3] Roe replies in further support of his motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion to remand.

### I.  BACKGROUND

This case involves alleged sexual and physical abuse of a minor by staff (including clergy, brothers, sisters, and lay employees) at the Hope Haven-Madonna Manor orphanage in approximately 1982 or 1983.[5] On May 1, 2020, because of similar allegations in a multitude of other cases, the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese"), a named defendant in the vast majority of these cases, filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[1] R. Doc. 11.
[2] R. Doc. 14.
[3] R. Doc. 15.
[4] R. Doc. 19.
[5] R. Doc. 1-1 at 1, 4-6.

Court for the Eastern District of Louisiana.[6]  The present case was filed in the Civil District Court for the Parish of Orleans on June 16, 2020, against defendants Catholic Charities and Ehlinger.[7]  The Archdiocese was not named as a defendant.  Catholic Charities removed the case to federal court, arguing that this Court has "related to" subject-matter jurisdiction under 28 U.S.C. §§ 1334 & 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure based on the Archdiocese's bankruptcy case.[8]  At the heart of this dispute are four liability insurance policies owned by the Archdiocese, but also purportedly covering Catholic Charities, in which the proceeds, if paid out, will only inure to the benefit of injured third parties.[9]

**II.     PENDING MOTION**

Roe argues that remand is appropriate because Catholic Charities is a separate entity from the Archdiocese so the outcome of this suit cannot affect the Archdiocese's bankruptcy case in such a way as would support removal.[10]  He contends that "related to" jurisdiction is not boundless and the insurance policies do not provide a sufficient connection to justify removal because the proceeds of those policies will never pay out to the Archdiocese or have any effect on the debtor's bankruptcy estate.[11]  Further, Catholic Charities has not met its burden of proving jurisdiction, he argues, because it never provided the full copies of the insurance policies or a complete picture of its insurance coverage.[12]  In the alternative, Roe argues that equity and permissive abstention justify remand.[13]

---

[6] R. Doc. 1 at 2 (citing *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. filed May 1, 2020)).
[7] R. Doc. 1-1.
[8] R. Doc. 1 at 1.
[9] R. Doc. 14-1.
[10] R. Docs. 11-1 at 9-11; 17-2 at 4-7.
[11] R. Docs. 11-1 at 9-11; 17-2 at 3-7.
[12] R. Docs. 11-1 at 8; 17-2 at 7-8.
[13] R. Doc. 11-1 at 13-20.

In opposition, Catholic Charities argues that "related to" jurisdiction is broad and the debtor does not have to be included as a defendant for such jurisdiction to be proper.[14] It asserts that the insurance policies and proceeds are both property of the debtor's estate and therefore provide the basis for "related to" jurisdiction.[15] In addition, Catholic Charities contends that such jurisdiction exists because "the Archdiocese will be heavily involved in this litigation at significant expense to itself and the bankruptcy estate, and would be directly impacted by any rulings on prescription or on the merits."[16] Catholic Charities concludes by asserting that neither equitable remand nor permissive abstention is appropriate under the various factors to be weighed.[17]

### III. LAW & ANALYSIS

#### A. "Related to" Jurisdiction and the Remand Standard

In bankruptcy cases, 28 U.S.C. § 1452(a) provides that a party may remove a claim to a district court if that court has jurisdiction of such claim under 28 U.S.C. § 1334. Section 1334 states "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Although broad, the scope of "related to" jurisdiction is not "limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). The Fifth Circuit has explained the scope of "related to" jurisdiction: "Before confirmation of the bankruptcy plan, a proceeding is related to the bankruptcy case if the 'outcome could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (quoting *In re*

---

[14] R. Doc. 14 at 4-5.
[15] *Id.* at 6-8.
[16] *Id.* at 3, 9-11.
[17] *Id.* at 11-15.

3

*Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013)); *see also Double Eagle Energy Servs., L.L.C. v. Markwest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019) (noting parenthetically "that section 1334(b) requires only that the claim conceivably affect the bankruptcy estate"); *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 295 (5th Cir. 2016) ("A proceeding is 'related to' a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.") (quoting *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999)); *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015) ("'Related to' jurisdiction includes any litigation where the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.") (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010)). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Id.*

    **B. The Absence of the Judgment Debtor as a Party to the Action Is Not Conclusive Evidence of Whether Remand Is Appropriate.**

It is not dispositive that the Archdiocese is not a defendant in this case. "It is well-established that, to be 'related to' a bankruptcy, it is not necessary for the proceeding to be against the debtor or the debtor's property." *In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 547 (5th Cir. 2002). One purpose of "related to" jurisdiction "is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)). Therefore, while the

4

Archdiocese's absence from this case plays a role in the analysis, it does not resolve the question before the Court.

### C. Since the Limited Proceeds of the Liability Policies May Be Overcome by Competing Claims, They Are "Related to" the Bankruptcy Case and, Therefore, Removal Is Proper.

The analysis of whether insurance proceeds belong to a bankruptcy estate "has a complicated history." *In re OGA Charters, L.L.C.*, 901 F.3d 599, 602 (5th Cir. 2018). While it is unquestioned that a liability insurance policy belonging to a debtor is property of the debtor's bankruptcy estate, whether the proceeds of that policy belong to the estate is determined on a case-by-case, fact-specific basis. *Id.* at 603. "The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). Generally, the recipient of the proceeds, whether the debtor or a third party, controls the analysis:

> On one extreme, when a debtor corporation owns a liability policy that *exclusively* covers its directors and officers, we know … that the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate. On the other extreme, when a debtor corporation owns an insurance policy that covers its own liability *vis-à-vis* third parties, we – like almost all other courts that have considered the issue – declare or at least imply that both the policy *and the proceeds* of that policy are property of the debtor's bankruptcy estate.

*In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) (emphasis in original; citation and footnotes omitted). The issue in any new case, then, is finding where along this well-defined spectrum the subject liability policy's proceeds land. *Id.* ("In this circuit, we are therefore in the position of knowing how to resolve cases on either end of the continuum, but we have not yet decided how to resolve cases lying somewhere along the continuum.").

Resolving this question on the facts of this case demands that the Court look to a more recent Fifth Circuit decision examining what happens when the proceeds of a liability policy are not to be paid to the debtor, but the number of competing claims by third parties could overcome the policy limits and expose the debtor to liability for the excess. On this point, the court held just two years ago: "In the 'limited circumstances' … where a siege of tort claimants threaten[s] the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." *OGA Charters*, 901 F.3d at 604. Even before *OGA Charters*, this departure from a strict "follow-the-proceeds" rule – that is, where classification of the proceeds as property of the estate depended upon their ending up in the hands of the debtor, as opposed to a third party or parties – was "long contemplated" by the court. *Id.*; *see also In re Vitek,* 51 F.3d at 535 (noting that some courts reject the policy/proceeds dichotomy because "it exposes a debtor's insurance policies to suit outside the ambit of the bankruptcy estate," and these courts "fear that splitting the proceeds of a liability policy between bankrupt and non-bankrupt insureds would create a race to the courthouse whenever potential liability exceeds total proceeds, as creditors scurry to see who can be first to get a judgment against the non-bankrupt insureds (worth a dollar on the dollar) instead of a claim against a bankrupt debtor's estate (often worth but pennies on the dollar, if anything)"); *In re Edgeworth*, 993 F.2d at 56 (holding that malpractice insurance policy's proceeds were not property of doctor-debtor's bankruptcy estate, but expressly noting that "no secondary impact has been alleged upon [the debtor's] estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds"); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1400 (5th Cir. 1987) (holding that D&O liability policy proceeds were not property of debtor's bankruptcy estate, but noting that other courts faced a different question when there was a likelihood "liability coverage would be exhausted" and debtor's "indemnification proceeds threatened").

6

In *OGA Charters*, 49 individuals were killed or injured in an accident involving a bus owned by a company with a capped liability insurance policy. 901 F.3d at 601-02. The Fifth Circuit held that the proceeds of the policy were property of the debtor's estate because "'[t]hough the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate.'" *Id.* at 604 (quoting *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988)). The court reasoned that where such claims threatened the debtor's estate over and above the policy limits, the debtor has an equitable interest "in having the proceeds applied to satisfy as much of these claims as possible." *Id*. The Fifth Circuit concluded that its holding was consistent with the bankruptcy court's task of marshalling the insurance proceeds, along with the debtor's other assets, to maximize the satisfaction of creditor claims and to preserve the debtor's estate. *Id*. at 604-05 (citing 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed.), and *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986)). Thus, the proceeds of a liability policy constitute property of the bankruptcy estate when the policy limit is insufficient to cover a multitude of competing tort claims.

In the case at bar, Catholic Charities points to at least 15 cases stemming from the same or similar facts underlying the tort claims asserted here – namely, sexual and physical abuse of children at the Hope Haven-Madonna Manor facilities.[18] Catholic Charities submits an affidavit in which Father Patrick Carr, a financial representative of the Archdiocese, attests that one of the four policies has an aggregate limit of $20 million for all claims of bodily injuries asserted

---

[18] R. Doc. 14 at 2. In August 2020, another section of this Court observed that the civil action before it was "one of thirty-five similar cases filed by plaintiffs who allege they were sexually abused as children by clergy members working for the Archdiocese." *Doe v. Archdiocese of New Orleans Indem., Inc.*, 2020 WL 4593443, at *1 (E.D. La. Aug. 11, 2020). The referenced cases are higher in number because they cover a wider time span (late 1960s into the 1990s) than those cited by Catholic Charities which are confined to claims emanating from the Hope Haven-Madonna Manor facilities.

7

against either Catholic Charities or the Archdiocese, or both.[19] The other three policies in play would have an occurrence limit for each incident that appears to be $300,000, but is inconclusive on the record before the Court.[20] The Archdiocese's financial representative attests further that the insurance company may try to cap the coverage under these three policies by defining all of the cases as a "single occurrence."[21]

*OGA Charters* and its rationale control the outcome of this case. Because Catholic Charities has demonstrated that the tort claims asserted in the 15 pending cases stem from the same or similar alleged conduct (with the potential for even more such claims),[22] and that it is readily conceivable that the liability for these claims could overcome the aggregate limits of the four liability insurance policies, the Court holds that the proceeds of these policies constitute property of the debtor's bankruptcy estate. Therefore, "related to" bankruptcy jurisdiction under 28 U.S.C. § 1452(a) exists, and this Court has federal subject-matter jurisdiction over this case.

### D. Equitable Remand and Permissive Abstention Are Not Appropriate in This Case.

Even if federal subject-matter jurisdiction exists, Roe asks this Court to exercise its discretion to remand the case to state court under the doctrines of equitable remand and/or permissive abstention. One court has recently summarized the law in this area as follows:

> As other courts have noted, the factors governing permissive abstention and equitable remand are nearly identical. Because the analysis is so similar, courts that grant remand often employ equitable remand in 28 U.S.C. § 1452(b), which allows a court to remand "on any equitable ground" claims removed under § 1452(a). This is a broad grant of authority. A court may consider the following factors when deciding a motion for equitable remand:

---

[19] *See, e.g.,* R. Doc. 14-1 at 7 (Policy No. ANO 025198129, effective 7/1/83 to 7/1/84). For now, based on the affidavit and insurance policy declaration pages it submits, Catholic Charities has borne its burden of proving jurisdiction, although the Court agrees with Roe that Catholic Charities could have been more fulsome in building its evidentiary record.
[20] R. Doc. 14-1 at 2.
[21] *Id.*
[22] In *Doe*, the court noted that there were as many as 70 known abuse claims against the Archdiocese, although suits had been filed (as of August 2020) in only about half of these cases. *Doe v. Archdiocese*, 2020 WL 4593443, at *4 n.8. The court went on to observe: "Based on the experience of other diocesan cases, it seems likely there will be many more claims filed during the bankruptcy period." *Id.*

> (1) [the] convenience of the forum;
> (2) the presence of non-debtor parties;
> (3) whether the case should be tried as a whole in state court;
> (4) the duplicative and uneconomic effect of judicial resources in two forums;
> (5) the lessened possibility of inconsistent results;
> (6) whether the state court would be better able to handle issues of State law;
> (7) the expertise of the Bankruptcy Court;
> (8) the degree of relatedness or remoteness to the main bankruptcy case;
> (9) prejudice to involuntarily removed parties;
> (10) whether the case involves forum shopping;
> (11) the burden on the Bankruptcy Court's docket; and
> (12) considerations of comity.

*Doe v. Archdiocese*, 2020 WL 4593443, at *3-4 (quoting *Lea v. Johnson & Johnson*, 2019 WL 3335143, at *2 (E.D. La. July 24, 2019); other citations omitted).

The parties' arguments about equitable remand here mirror those made by the parties in *Doe*. In denying equitable remand there, the court found –

> that both Plaintiff and the Archdiocese have equitable factors that favor their respective positions. Ultimately, though, the Court concludes that remand is inappropriate at this time, largely because the automatic stay has not been lifted. With the automatic stay still in effect, many of the equitable considerations Plaintiff cites in support of remand are less weighty than they would otherwise be. No discovery may proceed, no prescription hearings may be set, no state jury trial may occur, and generally no comity concerns exist because the substantive claims against the Archdiocese are stayed, regardless of the forum. Conversely, the Archdiocese's concerns about maintaining the numerous suits against it in one forum are equally valid whether the stay is in effect or not.

*Id.* at *4. This Court finds that the same analysis applies here with respect to Roe's claims against Catholic Charities. In addition, Roe is just one of many alleged victims of abuse like those alleged in this suit. Even assuming the bankruptcy stay were lifted, remand of the case is also not appropriate on equitable grounds because remand to allow Roe to proceed to judgment in state court – with the possibility he could recover all of his alleged damages from the insurer, thereby depleting the available policy limits – would disadvantage other potential victims in their

9

ability to recover their own proportionate share of the available insurance proceeds. Such a result is unfair and undermines the marshalling-of-assets function to be performed by the bankruptcy court.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that plaintiff Ralph Roe's motion to remand is DENIED.

New Orleans, Louisiana, this 13th day of October, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE